UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| KAREN O'BRIEN, | |
|---|---|
| Plaintiff, | 3:10 - CV- 120 (CSH) |
| v. | |
| LEONARD WISNIEWSKI and WIZ LEASING, INC., | AUGUST 21, 2013 |
| Defendants. | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**HAIGHT, Senior District Judge:**

**I. FACTUAL BACKGROUND**

Plaintiff Karen O'Brien ("Plaintiff" or "O'Brien") brings the present action for damages she allegedly suffered both during and after her employment by defendant Leonard Wisniewski ("Wisniewski") at defendant Wiz Leasing, Inc. ("Wiz Leasing") (collectively, "Defendants"), a car dealership in Milford, Connecticut, owned and operated at all relevant times by Wisniewski.[1] From March 2003 to September 2008, Plaintiff worked first as a title clerk and then later as office manager at Wiz Leasing. Doc. 1, ¶ 5. Plaintiff alleges that "in the fall of 2006, defendant Wisniewski began subjecting Plaintiff to unwelcome conduct of a sexual nature." *Id*. As time progressed, that conduct ultimately included, *inter alia*, "unwanted cards and letters," invitations for dates, "comment[s] about

---

[1] Wiz Leasing, Inc. is a Connecticut corporation wholly owned by defendant Leonard Wisniewski and maintains its principal place of business at 50 South Washington Street in Milford, Connecticut. Doc. 1, ¶ 2.

1

her boyfriend," "pulling [of] her hair," requests for kisses, comments about "her physical appearance and body," requests that she accompany him on vacation, telephone calls "at home late at night," "obscene gestures," "displays of pornography," and "many other offensive comments and actions." *Id.* Plaintiff alleges that she "repeatedly objected to such conduct and asked defendant Wisniewski to desist but his actions continued." *Id.*, ¶ 6.

On September 4, 2008, Wisniewski refused to approve Plaintiff's request for a personal day on the following day, September 5, time to which Plaintiff claimed she was "entitled."[2] *Id.*, ¶ 7. Plaintiff alleges that in denying her request, Wisniewski made a lewd comment and "further stated that she could not have any days off for the rest of the [y]ear and that he was reducing her vacations to one week per year." *Id.* Wisniewski's alleged responses to Plaintiff's request for a personal day were the "last straw" in what she considered an intolerable work environment of sexual advances.[3] Doc. 20, p. 15-16. Four days later, considering herself "constructively discharged" from her position, Plaintiff wrote a letter to Wisniewski, stating that his "comments and sexual advances became to[o] much for [her] to handle." Doc. 17-4 (letter of resignation); *see also* Doc. 1, ¶ 8; Doc. 20-3, p. 30-33.

Plaintiff thereafter filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), alleging unlawful sexual harassment and retaliation by Defendants.

---

[2] Defendants allege that O'Brien did not receive the day off because she had already taken more than three weeks off during 2008. Doc. 20, p. 16. Plaintiff has contested that allegation in detail in her deposition testimony. Doc. 20-3, p. 24, l. 17-25; p. 25, l. 1-4; & p. 27, l. 14 to p. 28, l. 3.

[3] Plaintiff testified at her deposition that Wisniewski responded to her request for a vacation/personal day by asking, "Do you think I would give you the time off so you could go f—k your boyfriend?" Doc. 1, ¶ 7; Doc. 20-3, p. 104, l. 18-22.

2

Doc. 1, ¶¶ 9-10. Plaintiff asserts that on February 17, 2009, Defendants responded to her CCHRO complaint and the next day Wisniewski made a complaint to the Milford Police Department, falsely accusing her of theft.[4] *Id.*, ¶¶ 11-12. Plaintiff believes that Wisniewski made these false accusations "for the specific purpose of retaliating against [her]" for filing a CCHRO complaint. *Id.*, ¶ 13. As a result, Plaintiff was arrested and prosecuted for the crime of larceny in the third degree, which required her to expend money to retain an attorney, appear in criminal court, and be "subjected to emotional distress, fear and anguish." *Id.*, ¶ 14. Upon investigation, "an Assistant State's Attorney . . . nolled the criminal charge against her." *Id.*, ¶15.

Plaintiff's Complaint in this action sets forth six counts: two counts of malicious prosecution (Counts One and Three) against Wisniewski and Wiz Leasing, respectively; two counts of intentional infliction of emotional distress (Counts Two and Four) against Wisniewski and Wiz Leasing, respectively; and two counts for sex discrimination, sexual harassment and retaliation – (1) in violation of Conn. Gen. Stat. § 46a-60 (Count Five) and (2) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count Six), both against Wiz Leasing. Plaintiff prays for relief in the form of compensatory damages, punitive damages, attorney fees and costs for sex discrimination, and sexual harassment and retaliation in violation of Title VII. As such, she requests a monetary award greater than $15,000, exclusive of interest and costs, and statutory

---

[4] According to Defendants, Plaintiff took $2,440 in cash, a partial payment made by contractor Anthony Piselli on March 31, 2008, for a 2002 Mercedes Benz he purchased from Wiz Leasing. Doc. 17-7 (Statement of Anthony Piselli). Defendants allege that Wisniewski received the CCHRO complaint against him on December 24, 2008, first notified the police of the alleged theft of Piselli's cash deposit on February 9, 2009, and made a written statement about the alleged theft for the police on February 18, 2009. Doc. 17-1, p. 13-14 & n.18.

interest under Conn. Gen Stat. § 37-3b.[5]

## II.   JURISDICTION

Plaintiff commenced this action in the Connecticut Superior Court, Judicial District of Ansonia/Milford, on December 28, 2009. Defendants removed the action to this Court on January 27, 2010, pursuant to 28 U.S.C. § 1441 (a). *See* Doc. 1 (Notice of Removal and Complaint); *see also O'Brien v. Wisniewski, et al.*, No. AAN-CV10-6001979-S (Conn. Super. Ct. 2010), filed 1/8/2010. The removal was based exclusively upon the inclusion of Plaintiff's federal Title VII claim – a claim "arising under the Constitution, laws, or treaties of the United States," which provides this Court with federal question jurisdiction under 28 U.S.C. § 1331, making the action removable as "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). With respect to Plaintiff's state law claims, there is no diversity of citizenship conferring subject matter jurisdiction upon this Court, but supplemental jurisdiction may exist over these claims provided "they form part of the same case or controversy" as the federal claim in the action. 28 U.S.C. § 1367(a).

## III.   PENDING MOTION

Pending before the Court is Defendants' "Motion for Summary Judgment" [Doc. 17], pursuant to Fed. R. Civ. P. 56(a), in which they seek entry of judgment on each of the six counts in

---

[5] It remains ambiguous to the Court how Plaintiff seeks "interest recoverable in negligence actions" under Conn. Gen. Stat. § 37-3b, when none of her six causes of action sounds explicitly in negligence. *See* Conn. Gen. Stat. § 37-3b(a) (for "action arising on or after May 27, 1997," allowing recovery of 10% interest per year for "damages for injury to the person, or to real or personal property, caused by negligence," computed upon the amount of judgment from 20 days after judgment or 90 days after verdict, "whichever is earlier").

4

Plaintiff's Complaint on the grounds that "[n]o reasonable jury could find that either named defendant participated in" the actions alleged by Plaintiff in support of her claims. Doc. 17-1, p. 1. Specifically, Defendants argue that "when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no genuine issue for trial." Doc. 17-1, p. 5 (citing *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005)).

## IV.     STANDARD FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact" so that "the movant is entitled to judgment as a matter of law.") (internal quotations and citations omitted).

"While 'conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion,' *Davis v. New York*, 316 F.3d 93, 100 (2d Cir.2002), '[federal courts] are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.' *Terry [v. Ashcroft,* 336 F.3d 128], 137 [(2d Cir. 2003)] (internal quotation marks [and citation] omitted)." *Donnelly v. Greenburgh Cent. School Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). Summary judgment is appropriate only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *accord Donnelly*, 691 F.3d at 141.

5

*See also Benn v. Kissane,* No. 11–5184–cv, 2013 WL 362974, at *2 (2d Cir. Jan. 31, 2013) ("A genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (quoting *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009) (internal quotations and citation omitted)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Redd v. New York Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir.2009). Once the movant satisfies that burden, the opposing party may defeat the motion by setting forth "specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.2009) (internal quotations omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (internal citation omitted). *See also Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (to avoid summary judgment on a factual issue, non-moving party must present more than "the mere existence of a scintilla of evidence").

## V. DISCUSSION

### A. Federal Law Claim

Count Six of the Complaint asserts that Wiz Leasing violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. It is the sole federal claim in this action and the exclusive

6

ground upon which Defendants have removed this case to federal court.

Title VII forbids "an employer . . . (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). A plaintiff who seeks relief under Title VII has the burden of making a *prima facie* case of discrimination, *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir.2002), which requires her to show that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir.2004).

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Thus, liability under Title VII does not extend to employers with fewer than fifteen employees. *See Arculeo v. On–Site Sales & Marketing, LLC,* 425 F.3d 193, 202–03 (2d Cir.2005) (affirming summary judgment for defendants because plaintiff failed to raise question of material fact regarding whether defendant employed fifteen persons). *See also Ericson v. City of Meriden*, 113 F.Supp. 2d 276, 284 (D.Conn. 2000); *Jacobson v. Int'l Tours and Events, LLC*, No. 3:09–cv–1050 (JCH), 2010 WL 5211488, at *2 (D.Conn. Dec. 10, 2010). "[A] Title VII defendant wishing to defeat a plaintiff's claim on the ground that it lacks fifteen employees is normally entitled to seek dismissal if the complaint shows on its face that the element of statutory coverage is lacking, or to seek summary judgment on that issue if undisputed facts can be presented to defeat coverage." *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358,

7

365-66 (2d Cir.2000).

The Court thus turns to the question of whether there exists a genuine issue regarding whether Wiz Leasing was an "employer" – *i.e.*, met the employee-numerosity requirement – under Title VII for purposes of this action. For Wiz Leasing to prevail, the Court must find that the record indisputably shows that Wiz Leasing employed fewer than fifteen employees for twenty weeks in the year of and/or the year preceding Plaintiff's claim. 42 U.S.C. § 2000e(b).

In the case at bar, the crux of Plaintiff's Title VII claim is that she was "constructively discharged" in September of 2008 when Wisniewski failed to approve her requested leave and instead replied to her in a lewd fashion, informed her that "she could not have any days off for the rest of the [y]ear," and "reduce[d] her vacations to one week per year."[6] Doc. 1, p. 5, ¶¶ 7-8. At that

---

[6] When a constructive discharge is found, an employee's resignation is treated — for the purposes of establishing a prima facie case of employment discrimination—as if the employer had actually discharged the employee. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987). As the Second Circuit has repeatedly articulated, "[a]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Petrosino v. Bell Atlantic*, 385 F.3d 201, 229 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) and "cases cited therein"). Working conditions are sufficiently 'intolerable' when they become "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Lopez*, 831 F.2d at 1188 (internal quotations and citation omitted). The intolerable environment must exist at the time of the resignation. *Flaherty v. Metromail Corp.*, 59 F. App'x 352, 354-55 (2d Cir. 2002) ("affirm[ing] the dismissal of [plaintiff's] complaint on the ground that she fail[ed] to raise a disputed issue of material fact regarding the presence of objectively intolerable working conditions deliberately created by her employer *at the time of her resignation*") (emphasis added). Moreover, "the date of discharge triggers the limitations period in a constructive discharge case, just as in all other cases of wrongful discharge." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) (quoting *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998)).

Here, Plaintiff left her employment with Wiz Leasing at the point when she determined that Wisniewski's "sexual advances became too much for [her] to handle." Doc. 17-4, p. 1; *see also* Doc. 20-3, p. 32, l. 15-18. Specifically, her "constructive discharge" occurred when "the abusive working environment became so intolerable that her resignation qualified as a fitting response." Doc. 20, p. 14 (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 130 (2004)).

8

time, Wisniewski's actions may have "ratcheted" the alleged harassment up to "the breaking point" for a reasonable person in Plaintiff's position to endure. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147-48 (2004) ("A constructive discharge involves both an employee's decision to leave and precipitating conduct" – *e.g.*, where "harassment ratchet[s] up to the breaking point"). Because Plaintiff's Title VII claim is premised on her alleged "constructive discharge" in September of 2008, she must show that Wiz Leasing employed fifteen or more people for twenty weeks in 2008 or in the preceding year of 2007.[7]

On the date he answered the CCHRO complaint, Wisniewski denied that Wiz Leasing employed 15 employees and asserted that "Wiz Leasing has five employees." Doc. 20-4. Wisniewski provided no employees' names and presented no documentation or business records to verify the number of Wiz Leasing's employees during the period at issue. However, through filing supplements per order of the Court, Wiz Leasing has established that it employed fewer than the requisite fifteen employees during the relevant calendar years. *See* Doc. 31-1 (providing W-2 Wage and Tax Statements for six (6) employees of Wiz Leasing for the calendar year 2007) and Doc. 28-1 (providing W-2 Wage and Tax Statements for ten (10) employees of Wiz Leasing for the calendar year 2008).[8] Furthermore, Plaintiff does not contest this evidence regarding Wiz Leasing's number

---

[7] Plaintiff alternatively describes her Title VII claim as one for "retaliation," perhaps believing that she was denied time off in September 2008 due into her failure to submit to Wisniewski's advances. Doc. 1, p. 9, Doc. 20-4, p. 5-7. *See, e.g, Burrell v. CUNY*, 894 F.Supp. 750, 761 (S.D.N.Y.1995) (refusing to accede to sexual advances is an activity protected under Title VII).

[8] By Order, this Court directed Wiz Leasing to file and serve evidentiary material to show the names and numbers of individuals who were its employees during the relevant period for Plaintiff's claims. Doc. 27, 29. When determining whether an employer has the requisite number of employees under Title VII, a Court often employs the "payroll method," examining an employer's payroll, *Walters v. Metropolitan Educ. Enterprises, Inc.*, 518 U.S. 202, 206 (1997). The W-2 forms submitted by Wiz Leasing effectively revealed its "payroll" of employees for the years in question.

of employees during the relevant years. Rather, she concedes that her Title VII action cannot proceed, stating in response to Defendants' supplemental filings that "defendants have demonstrated that the only Count of the Complaint which states a federal cause of action [*i.e.*, her Title VII claim] is not viable."[9] Doc. 33. Plaintiff thus moves this Court to remand her case to the Connecticut Superior Court for the Judicial District of Ansonia/Milford, the court from which Defendants removed this action.

In sum, there is no genuine issue of material fact that during the relevant years, Wiz Leasing did not employ the requisite minimum of fifteen employees under Title VII so was not an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b). Wiz Leasing is entitled to summary judgment on the Title VII claim.

B. **State Law Claims**

A federal district court's exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is discretionary. *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). The Court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484

---

[9] Plaintiff expressly bases her statement that the Title VII claim is "not viable" on Defendants' showing regarding "the number of employees [Defendants] had on [the] payroll during the applicable time period." Doc. 33, p. 1.

U.S. 343, 350 n. 7 (1988).[10] *See also Mills v. Re/Max Heritage*, 303 F.Supp.2d 160, 162 (D.Conn.2004); *Jacobson*, 2010 WL 5211488, at *3.

Plaintiff herein has moved to remand the case to state court and Defendants have filed no opposition papers.[11] Ordinarily, when ruling on a motion to remand, the court construes all factual allegations in favor of the movant, *Metro. Prop. & Cas. Ins. Co. v. J.C. Penney Cas. Ins. Co.*, 780 F.Supp. 885, 887 (D.Conn.1991); and the burden of establishing federal jurisdiction is on the parties who removed the case to federal court, *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Unless the balance is strongly in favor of the defendant, "the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). *See also Gross v. British Broadcasting Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) ("a plaintiff's choice of forum is presumptively entitled to substantial deference").

In the case at bar, Defendants have proven that they are entitled to summary judgment on Plaintiff's Title VII claim, which presented the sole federal question in this action and thus the basis for removal to this Court. Absent "diversity of citizenship" subject matter jurisdiction, the Court may refrain from exercising supplemental jurisdiction over the remaining state law claims and remand them to Connecticut Superior Court. *See, e.g.*, *Estate of Gadway v. City of Norwich*, 512

---

[10] Although *Cohill* was decided prior to the adoption of 28 U.S.C. § 1367, the Supreme Court's reasoning therein has been applied to district court decisions as to whether to exercise or decline supplemental jurisdiction over state law claims. *See, e.g. Valencia ex rel. Franco v.. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).

[11] The only statement Defendants have made against remand appeared in a footnote in their supporting brief. Contemplating that the Court might grant summary judgment as to Count Six, Defendants "respectfully request[ed] this Court to grant summary judgment on all counts rather than remand to state court." Doc. 17-1, p. 29 n.24.

F.Supp.2d 134, 137 (D.Conn. 2007) (upon entering summary judgment for defendants on federal claims, court "decline[d] to exercise supplemental jurisdiction over the remaining state law claims, . . . [and ] remanded to state court"). *See also Jacobson*, 2010 WL 5211488, at *3-4; *Pezzullo v. Webster Bank*, No. 3:06–cv–01220 (VLB), 2008 WL 4307111, at *4 (D. Conn. Sept. 19, 2008).

With respect to Defendants' desire to remain in federal court, the notion of fairness diminishes whatever weight that wish might ordinarily carry. As the Court previously noted, when Wiz Leasing removed the case to this Court, it had to know that it did not employ fifteen employees during the relevant calendar years and thus did not fulfill the employee-numerosity requirement for Plaintiff to maintain her Title VII claim. In light of that fact, and given that Defendant removed solely upon the basis of that federal claim, "Defendants' removal of the case from state court was improvidently, perhaps abusively, made." Doc. 27, p. 5

Plaintiff continues to prefer to pursue her claims in state court, her original choice of forum. Moreover, remand to state court will neither waste judicial resources nor result in undue delay. During the time this case has been pending in federal court, the parties have completed pre-trial discovery and prepared their legal arguments, all of which will facilitate proceedings in state court. Moreover, the remaining claims will depend upon (1) state law standards for the common law actions of malicious prosecution and intentional infliction of emotional distress and (2) statutory interpretation of Connecticut's "[d]iscriminatory employment practices" statute, Conn. Gen. Stat. § 46a-60. Comity favors resolution of such state-related matters by the state court.[12] Accordingly,

---

[12] *See Young v. New York City Transit Auth.*, 903 F.2d 146, 163–64 (2d Cir.1990) ("it is fundamental that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law' ") (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)), *cert. denied*, 498 U.S. 984 (1990). Put simply, "[a] district court ought not 'reach out for . . . issues,

Plaintiff's motion to remand the case to state court will be granted.

VI. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 17] is GRANTED in favor of Wiz Leasing as to Count Six of the Complaint, violation of Title VII of the Civil Rights Action of 1964, 42 U.S.C. § 2000e, *et seq*. The Clerk is directed to enter judgment in Wiz Leasing's favor on that Count.

Given its declination of supplemental jurisdiction over the state law claims set forth in Counts One through Five, this Court expresses no view as to whether summary judgment should enter as to those claims. Plaintiff's Motion to Remand to State Court [Doc. 33] is GRANTED. The Clerk is directed to remand the case to the Connecticut Superior Court, Judicial District of Ansonia/Milford, including in the file the summary judgment motion addressed to the remaining claims, and to close the case in this Court.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
August 21, 2013

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

thereby depriving state courts of opportunities to develop and apply state law.'" *Young*, 903 F.2d at 164 (quoting *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749, 757 (2d Cir.1986)) (ellipsis in original).